UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 13-2139(DSD/TNL)

Mark Alan Greenman,

        Plaintiff,

v.                                                        **ORDER**

Officer Jeremiah Jessen,
Sgt. Jason Nelson, Chief
Ed Belland, City of Medina
and Steven M. Tallen,

        Defendants.

      Jordan S. Kushner, Esq., Law Office of Jordan S. Kushner, 431 South Seventh Street, Suite 2446, Minneapolis, MN 55415, counsel for plaintiff.

      Daniel P. Kurtz, Esq. and Everett and VanderWiel, PLLP, 100 Center Drive, Buffalo, MN 55313 and George C. Hoff, Esq. and Haff, Barry & Kozar, P.A., 775 Prairie Center Drive, Suite 160, Eden Prairie, MN 55344, counsel for defendants.

This matter is before the court upon the motion to dismiss by defendant Steven M. Tallen and the motion for judgment on the pleadings by defendants Officer Jeremiah Jessen, Sgt. Jason Nelson, Chief Ed Belland and City of Medina (collectively, defendants). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motions in part.

**BACKGROUND**

This civil-rights dispute arises out of the arrests of plaintiff Mark Alan Greenman by Medina, Minnesota police officers.

On three occasions, Greenman was arrested by Medina police officers while operating his Segway personal transporter device under the influence of alcohol.

On the evening of August 17, 2010, Greenman was riding his Segway on a road near his home in Medina. Id. ¶ 11. Greenman was pulled over by Jessen, an officer with the Medina Police Department. Id. Jessen stated in his police report that he stopped Greenman because the "Segway ... did not have a headlight or other lights for safety purposes for traveling on a roadway." Id. ¶ 12. Upon stopping Greenman, Jessen asked Greenman to perform field sobriety tests and take a preliminary breath alcohol test. Id. ¶ 13. Greenman refused the tests. Id. Jessen arrested Greenman, handcuffed him and placed him in the back of the squad car. Id. ¶¶ 13-14. Jessen transported Greenman to the Medina police station and then to Maple Grove Hospital for a blood alcohol test. Id. ¶ 14.

On October 15, 2010, Nelson, a sergeant with the Medina Police Department, filed a formal criminal complaint against Greenman in Hennepin County District Court, charging him with (1) gross misdemeanor DWI, (2) misdemeanor DWI, (3) misdemeanor careless driving and (4) possession of marijuana in a motor vehicle.[1] Id.

---

[1] The misdemeanor careless driving charge was later amended to a misdemeanor charge of failing to operate an electric personal assistive device with due care, and the charge for possession of marijuana in a motor vehicle was amended to possession of a small
(continued...)

¶ 15.   Tallen represented the City of Medina during the subsequent proceedings.   Id. ¶ 16.   Greenman filed a motion to dismiss the charges for lack of probable cause.   Id.   On June 17, 2011, Hennepin County District Court Judge Ronald L. Abrams dismissed the two DWI charges and the possession of marijuana charge.[2]   Id. Following a bench trial, Greenman was acquitted of failing to operate an electric personal assistive device with due care.   Id. ¶ 17.   The City of Medina did not appeal the dismissal or the acquittal.   Id. ¶ 18.

On February 4, 2012, Jessen again stopped Greenman while Greenman was riding his Segway on Elm Creek Drive in Medina.   Id. ¶ 21.   Greenman again refused to perform field sobriety and breath tests, and Jessen arrested Greenman.   Id.   Jessen charged Greenman with driving while impaired, issued a notice of revocation of Greenman's driver's license and impounded the Segway.   Id.

On March 16, 2012, Nelson observed Greenman lying down next to his Segway on the sidewalk of Hunter Drive in Medina.   Id. ¶ 25. Nelson administered field sobriety tests and a preliminary breath

---

[1](...continued)
amount of marijuana.   Compl. ¶ 15.

[2] Judge Abrams found that the Segway fell under Minnesota's definition of "electric personal assistive mobility device," and that those operating such a device have the rights and responsibilities of a pedestrian.   Kurtz Aff. Ex. B, at 3; see Minn. Stat. § 169.212 subdiv. 1.   Further, Judge Abrams dismissed the marijuana charge because the marijuana was discovered during a search incident to the unlawful custodial arrest.   Kurtz Aff. Ex. B, at 3-4.

test, which Greenman failed.  Id.  Thereafter, Nelson arrested Greenman, transported him to the Medina police station and administered a breath alcohol test.  Id. ¶ 26.  Nelson impounded the Segway and issued a notice of forfeiture for the Segway.  Id. Nelson also issued a notice of revocation of Greenman's driver's license.  Id.  Greenman was then transported to Hennepin County Jail in Minneapolis, where he was booked for probable cause felony DWI and held for three days.  Id. ¶ 27.

On March 22, 2012, Belland, the Medina Police Chief, filed a formal criminal complaint against Greenman relating to the February 4, 2012, arrest.  The complaint alleged two counts of gross misdemeanor DWI.  Id. ¶ 22.  On July 13, 2012, Nelson filed a formal criminal complaint relating to the March 16, 2012, arrest, charging Greenman with felony DWI.  Id. ¶ 28.  On August 29, 2012, Hennepin County District Court Judge Denise Reilly dismissed the charges relating to the February 4, 2012, arrest.[3]  Id. ¶ 23.  The City of Medina appealed, and on January 22, 2013, the Minnesota Court of Appeals affirmed the dismissal, holding that "a Segway is not a motor vehicle within the meaning of the impaired-driving code."  Id. ¶ 24; see State v. Greenman, 825 N.W.2d 387, 393 (Minn.

---

[3] Specifically, Judge Reilly held that, while operating his Segway, Greenman "was acting as a pedestrian as a matter of law" and could not be charged with DWI.  Kurtz Aff. Ex. G, at 7.

Ct. App. 2013).  On March 1, 2013, the Hennepin County Attorney's Office voluntarily dismissed the charges relating to the March 16, 2012, arrest.  Compl. ¶ 29.

On July 8, 2013, Greenman filed this action in Minnesota court, alleging (1) claims under 42 U.S.C. § 1983, (2) false imprisonment, (3) trespass to chattel, (4) malicious prosecution and (5) negligence.  Defendants timely removed.  Tallen moves to dismiss and the remaining defendants move for judgment on the pleadings.

## DISCUSSION

### I.   Standard of Review

The same standard governs a motion to dismiss for failure to state a claim under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c).  See Clemons v. Crawford, 585 F.3d 1119, 1124 (8th Cir. 2009).  To survive either motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citations and internal quotation marks omitted)).  "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (citing Bell Atl. Corp. v. Twombly,

550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 129 S. Ct. at 1949 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6) and Rule 12(c). See Fed. R. Civ. P. 12(d). The court, however, may consider matters of public record and materials that do not contradict the complaint, as well as materials that are "necessarily embraced by the pleadings." See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citations and internal quotation marks omitted). Here, the state court decisions are matters of public record and are properly considered.

## II.  Section 1983 Claims

Section 1983 of Title 42 "is not itself a source of substantive rights." Albright v. Oliver, 510 U.S. 266 (1994) (citation and internal quotation marks omitted). As a result, a plaintiff must "identify the specific constitutional right allegedly infringed." Id. (citations omitted). Here, Greenman claims that defendants violated (1) his Fourth Amendment right to be free from unreasonable search and seizure, (2) his Fifth and Fourteenth Amendment due process rights and (3) his First Amendment

6

rights of free speech and to petition the government for redress of grievances. Greenman also alleges that the defendants conspired to deprive him of such rights.

Defendants argue that each of the § 1983 claims is barred by their qualified immunity.[4]  "The doctrine of qualified immunity protects [law enforcement] officers from personal liability under § 1983 insofar as their conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." Baribeau v. City of Minneapolis, 596 F.3d 465, 473 (8th Cir. 2010) (per curiam) (second alteration in original) (citation and internal quotation marks omitted).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (citations and internal quotation marks omitted).  The court applies the doctrine of qualified immunity so as to afford "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005) (citation and internal quotation marks omitted).

---

[4] Tallen also argues that the claims against him are barred by absolute prosecutorial immunity.  Because the court finds that qualified immunity bars all of the § 1983 claims, it need not reach this argument.

To determine whether defendants are entitled to qualified immunity, the court views the facts in the light most favorable to plaintiffs and considers (1) whether the alleged facts demonstrate that the conduct of defendants violated a constitutional right and (2) whether the right claimed was clearly established at the time of the alleged injury. See Howard v. Kan. City Police Dep't, 570 F.3d 984, 988 (8th Cir. 2009). "If the answer to either question is no, then [defendants are] entitled to qualified immunity." Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010). The court may consider either prong first, "in light of the circumstances in the particular case at hand." Baribeau, 596 F.3d at 474 (citation and internal quotation marks omitted).

**A.    Fourth Amendment**

Greenman first alleges that each of his arrests was in violation of the Fourth Amendment. Specifically, Greenman alleges that defendants did not have probable cause to arrest or prosecute him for DWI because Minnesota's impaired-driving code does not apply to Segways. Defendants argue that they are entitled to qualified immunity because, at the time of the arrests, it was not clearly established that Segways were exempt from the impaired-driving statutes. The "clearly established" inquiry asks "whether it would be clear to a reasonable [official] that [his] conduct was unlawful in the situation [he] confronted." Lindsey v. City of Orrick, Mo., 491 F.3d 892, 897 (8th Cir. 2007) (first alteration in

original) (citations and internal quotation marks omitted).
Officers are entitled to qualified immunity "if they arrest a
suspect under the mistaken belief that they have probable cause to
do so, provided that the mistake is objectively reasonable."
Baribeau, 596 F.3d at 478 (citation and internal quotation marks
omitted). "The fundamental question under this analysis is whether
the state of the law, as it existed at the time of the arrest, gave
the defendants fair warning that the arrest was unconstitutional."
Id. (citation and internal quotation marks omitted).

### 1.   Arrest on August 17, 2010

Defendants first argue that at the time of the August 17,
2010, arrest, it was not clearly established that Segways were
exempt from the impaired-driving code.   The court agrees.
Minnesota traffic law is governed by Minnesota Statutes Chapters
169, which sets forth general traffic regulations, and 169A, which
governs impaired-driving offenses.   Under Minnesota law, "[i]t is
a crime for any person to drive, operate, or be in physical control
of any motor vehicle ... when ... the person is under the influence
of alcohol."   Minn. Stat. § 169A.20, subdiv. 1(1).   A "motor
vehicle" is defined by the impaired-driving code as "every vehicle
that is self-propelled and every vehicle that is propelled by
electric power obtained from overhead trolley wires. The term ...
does not include a vehicle moved solely by human power."   Id.
§ 169A.03, subdiv. 15.

Greenman argues that the broad definition of "motor vehicle" in Chapter 169A is limited by that Chapter's incorporation of the definition of "vehicle" from Chapter 169.  Both Chapters 169 and 169A define "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway."  Minn. Stat. § 169.011, subdiv. 92; see Minn. Stat. § 169A.03, subdiv. 25 (incorporating Chapter 169's definition of "vehicle").  Indeed, subsequent to the August 17, 2010, arrest, the Minnesota Court of Appeals adopted such an interpretation, holding that a motorized "mobility scooter" was not a "motor vehicle" for purposes of Chapter 169A because it did not generally travel on the highway and, thus, did not meet Chapter 169's definition of "vehicle."  See State v. Brown, 801 N.W.2d 186, 189 (Minn. Ct. App. 2011).  Greenman argues that by examining the plain language and interrelatedness of the two chapters, a reasonable officer would have known that there was no probable cause to arrest him for DWI.

At the time of the August 17, 2010, arrest, however, there was no judicial interpretation of the definition of "motor vehicle" as narrower than the plain language of Chapter 169A.  See Minn. Stat. § 169A.03, subdiv. 15.  "[I]n close qualified immunity cases, the absence of judicial guidance can be significant because [p]olice officers are not expected to parse code language as though they were participating in a law school seminar."  Baribeau, 596 F.3d at 480 (second alteration in original) (citations and internal

quotation marks omitted).  Indeed, given the plain language of the statute and the state of the law at the time of the August 17, 2010, arrest, any mistake as to whether there was probable cause to arrest an individual for DWI while operating a Segway was reasonable.  See id. at 478.  As a result, qualified immunity bars any claim relating to the August 17, 2010, arrest.

### 2.   Arrests on February 4, 2012, and March 22, 2012

Defendants also argue that they are entitled to qualified immunity on the claims arising out of the arrests on February 4, 2012, and March 22, 2012, because, at the time of those arrests, the law was still not clearly established.  Greenman responds that, in between his first and subsequent arrests, two judicial opinions clearly established the inapplicability of the impaired-driving code to Segways: (1) the Minnesota Court of Appeals' June 13, 2011, decision in Brown and (2) the Hennepin County District Court's dismissal of the charges stemming from hi first arrest.  See Kurtz Aff. Ex. B.

### a.   Brown

Greenman argues that Brown clearly established that Segways were exempt from the impaired-driving code.  As already explained, the Brown court held that the "operation of [a] scooter as a substitute for walking does not make [the operator] the driver of a motor vehicle within the meaning of [the impaired-driving code] and does not subject [the operator] to criminal charges for

operating the scooter while impaired." 801 N.W.2d at 189. In so doing, the court relied upon the fact that a mobility scooter is "generally not a device in, upon, or by which any person or property is or may be transported ... upon a highway" and thus, is not a "vehicle" for purposes of the impaired-driving code. Id. (alteration in original) (internal quotation marks omitted).

Defendants respond that Brown - which analyzed the application of the impaired-driving code to a motorized scooter - did not clearly establish that the impaired-driving code applies to Segways. The court agrees. Although the Minnesota Court of Appeals later extended the reasoning of Brown to Segways, "[p]ublic officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases." Hudson v. Hall, 231 F.3d 1289, 1297 (11th Cir. 2000) (citations omitted); see Greenman, 825 N.W.2d at 390. In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004) (citation and internal quotation marks omitted). Here, the application of the statute was an unsettled question at the time of the arrests, and a reasonable officer could have thought that the impaired-driving code applied to Segways. Indeed, the decision ultimately extending the reasoning of Brown to Segways was a split one, indicating that at least one reasonable judicial officer thought that Segways were not exempt from the impaired-

12

driving code. See Greenman, 825 N.W.2d at 393-94 (Klaphake, J., dissenting). As a result, the Brown decision regarding motorized scooters did not clearly establish that Segways were exempt from the impaired-driving code.

### b. Dismissal of Previous Case

Greenman next argues that defendants are not entitled to qualified immunity because the Hennepin County District Court dismissed the charges against him stemming from the February 4, 2012, arrest. In support, Greenman argues that there is no qualified immunity when a state official "disobey[s] a final and nonappealable court order." Slone v. Herman, 983 F.2d 107, 111 (8th Cir. 1993); see also Walters v. Grossheim, 990 F.2d 381, 385 (8th Cir. 1993). Here, however, unlike in Slone and Walters, the District Court opinion, though final, only dismissed the pending criminal charges and was not a court order directing defendants to take or refrain from any action.

Moreover, qualified immunity is only "lost when plaintiffs point either to *cases of controlling authority in their jurisdiction* at the time of the incident or to a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2086 (2011) (Kennedy, J., concurring) (emphasis added) (citations and internal quotation marks omitted). A single district court opinion is not controlling authority, nor does it

13

reflect a consensus of persuasive authority.  As a result, a reasonable officer at the time of the arrests could have believed that operating a Segway while impaired violated the impaired-driving code.  Therefore, qualified immunity bars the § 1983 Fourth Amendment claim, and dismissal is warranted.

**B.    Due Process**

Greenman next alleges a § 1983 due process claim under the Fifth and Fourteenth Amendments.  Specifically, Greenman alleges that (1) after the charges from his first arrest were dismissed, he had a constitutional expectation that Medina police officers would not arrest him again for similar conduct and (2) defendants engaged in malicious prosecution.  It is unclear whether Greenman is alleging violations of his substantive or procedural due process rights.

Defendants argue that Greenman's claim fails under either substantive or procedural due process.  The court agrees.  To the extent that Greenman alleges a substantive due process claim, it is duplicative of his Fourth Amendment claim.  Indeed, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing th[o]se claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (citation and internal quotation marks omitted).  Because the allegations of

14

arrest and prosecution without probable cause fall within the ambit of the Fourth Amendment claim, any substantive due process claim necessarily fails.  See Smithson v. Aldrich, 235 F.3d 1058, 1064 (8th Cir. 2000).

Moreover, to the extent that Greenman alleges a procedural due process claim, such a claim also fails.  "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake ....  Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law."  Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citations omitted). Greenman has not alleged a constitutionally-recognized liberty interest[5] or any available process that he was denied.  As a result, any procedural due process claim fails, and dismissal is warranted.

## C.   First Amendment Claim

Greenman next alleges a claim for violation of his First Amendment rights.  Specifically, Greenman argues that his arrests

---

[5] Greenman argues that the Eighth Circuit has recognized that liberty interests are implicated when state officials disregard court orders affecting the confinement of prison inmates.  See Walters v. Grossheim, 990 F.2d 381, 385 (8th Cir. 1993); Slone v. Herman, 983 F.2d 107, 110 (8th Cir. 1993).  As already explained, however, the order dismissing the charges stemming from Greenman's first arrest is distinguishable from the court orders in Walters and Slone.  Therefore, Walters and Slone are inapposite.

were in retaliation for representing a client in a case[6] against
the City of Medina.  As already explained, however, the defendants
had arguable probable cause to arrest Greenman for DWI on each of
the incidents in question.  As a result, those arrests cannot
support a § 1983 First Amendment claim.  See Redd v. City of
Enterprise, 140 F.3d 1378, 1383 (11th Cir. 1998) ("Because we hold
that the officers had arguable probable cause to arrest [the
plaintiff] for disorderly conduct, we must hold that the officers
are also entitled to qualified immunity from the ... First
Amendment claims.").  As a result, dismissal of the First Amendment
claim is warranted.

     **D.  Civil Rights Conspiracy**

     Greenman next alleges that defendants conspired to violate his
constitutional rights.  Defendants are entitled to qualified
immunity on all of the underlying constitutional claims.
"[B]ecause there was no underlying constitutional violation, [the]
conspiracy claim necessarily fails as well."  Immekus v. Page, 44
F. App'x 35, 36 (8th Cir. 2002) (per curiam) (citation omitted).
As a result, dismissal of the civil rights conspiracy claim is
warranted.

---

     [6] Greenman is an attorney licensed to practice in the State of
Minnesota.  Compl. ¶ 9.

16

## III.  Municipal Liability

Greenman also alleges that the City of Medina is liable for the acts of its officers because it maintained an unconstitutional policy or custom.  "[A] municipality may be held liable for the unconstitutional acts of its officials or employees when those acts implement or execute an unconstitutional municipal policy or custom."  Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)).  A municipality, however, may not be held liable for its officers' actions unless the officers are "found liable on the underlying substantive claim."  Abbott v. City of Crocker, 30 F.3d 994, 998 (8th Cir. 1994) (citations omitted), abrogated on other grounds by Engleman v. Deputy Murray, 546 F.3d 944 (8th Cir. 2008).  As already explained, dismissal is warranted on all constitutional claims against the individual defendants.  As a result, dismissal of the municipal liability claim against the City of Medina is warranted.

## IV.  Remaining State Law Claims

Dismissal of the § 1983 claims - the only claims for which original jurisdiction existed - is warranted.  Thus, the court must now consider whether to exercise supplemental jurisdiction over the remaining state-law claims.  See 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir 2004).  "[I]n the usual case in which all federal-law claims are eliminated

17

before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Dodson v. Univ. of Ark. for Med. Scis.</u>, 601 F.3d 750, 756 (8th Cir. 2010) (per curiam) (citations and internal quotation marks omitted). Based on consideration of the pendent jurisdiction factors, the court does not exercise its discretion to take supplemental jurisdiction over the state-law claims. Therefore, the court dismisses Greenman's remaining state law claims without prejudice.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    The motion to dismiss [ECF No. 7] is granted in part, consistent with this order;

2.    The motion for judgment on the pleadings [ECF No. 12] is granted in part, consistent with this order;

3.    Greenman's federal constitutional claims are dismissed with prejudice;

4.    Greenman's state-law claims are remanded to Minnesota state court.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 25, 2014                    s/David S. Doty
                                          David S. Doty, Judge
                                          United States District Court

18